## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

YESICA DEL CARMEN HERNANDEZ
ROJAS, 8 Crestwood Drive, Apt. 8b,
Gaithersburg, MD 20877,

       *Plaintiff*,

v.

U.S. DEPARTMENT OF HOMELAND
SECURITY, 3801 Nebraska Avenue, N.W.,
Washington, DC 20016; U.S.
CITIZENSHIP AND IMMIGRATION
SERVICES, 20 Massachusetts Avenue,
N.W., Washington, DC 20529; JOHN F.
KELLY, Secretary of Homeland Security, in
his official capacity, 3801 Nebraska
Avenue, N.W., Washington, DC 20016;
JAMES MCCAMENT, Acting Director,
U.S. Citizenship and Immigration Services,
in his official capacity, 20 Massachusetts
Avenue, N.W., Washington, DC 20529;
GREG L. COLLETT, District Director, U.S.
Citizenship and Immigration Services, in his
official capacity, 3701 Koppers Street,
Baltimore, MD 21227,

       *Defendants*.

Civil Action No.

1:17-cv-1422

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1.     It is the policy of the United States, reflected in the Immigration and Nationality

Act ("INA"), that persons otherwise eligible for the protection of Special Immigrant Juvenile

("SIJ") status shall be entitled to that status up to age twenty-one so long as the person's state of

residence also permits persons up to that age to be protected.  And it is the policy of the State of

Maryland that SIJ protection be available to residents up to age twenty-one.

2.      There is no dispute here that Plaintiff Yesica del Carmen Hernandez Rojas suffered abuse and neglect of the kind calling for SIJ protection, and it is apparent on the face of the original Maryland court order that the state court judge determined that Yesica met all of the eligibility criteria for SIJ treatment.  To exclude any doubt that Maryland intends persons up to age twenty-one to be SIJ-eligible, the State amended its custody and guardianship statute to define "child" for SIJ purposes to specifically include any person under the age of twenty-one.

3.      After the statute was amended, the Maryland court, which found it had jurisdiction to issue SIJ-related orders prior to the amendment, reissued its order *nunc pro tunc* as of the date of the enactment of the amended statute (at which date Yesica was still under twenty-one) for the obvious purpose of giving her the benefit of the amended statute if needed.

4.      Despite the policies of the United States and of the State of Maryland, and the clear intent of the presiding state court judge, U.S. Citizenship and Immigration Services ("USCIS") denied Yesica SIJ status even though she was under age twenty-one when the SIJ findings were made by the Maryland court.  In doing so, it disregarded applicable law and policy and abused its discretion.  The action of USCIS should therefore be abrogated and an order entered to require USCIS to grant SIJ status to Yesica.

5.      At age seventeen, Yesica fled to the United States to escape an abusive household in El Salvador that had ostracized her because of her pregnancy.  The eleven-person, single-parent household Yesica left behind had provided her only basic sustenance as a child, and then cut off even that meager support when Yesica became pregnant.  Beginning at a very young age, Yesica was assigned dangerous, time-consuming household tasks, which forced Yesica to limit her time in school.  Instead of rewarding Yesica for her work, however, Yesica's mother beat her severely and repeatedly without provocation.

-2-

6.      Faced with a bleak and dangerous future, Yesica made the difficult journey to the United States, where she was reunited with her sister and her sister's partner.  They provided Yesica the support that a frightened, abused, seventeen-year-old mother-to-be needed, and they have been essential in helping to raise Yesica's now five-year-old, U.S. citizen child.

7.      To better fulfill their role as Yesica's de facto adoptive parents, Yesica's sister and her sister's partner petitioned the Maryland courts to formally adopt Yesica.  On June 9, 2014, when Yesica was twenty years old, the Circuit Court for Montgomery County, Maryland (the "Maryland Court") recognized the parent-like bond that Yesica's sister and partner had formed with Yesica over the previous three years and entered an order of adoption.  The order terminated Yesica's mother's parental rights and awarded full custody to Yesica's sister and her sister's partner.

8.      As part of those proceedings and consistent with the federal statutory scheme, the Maryland Court also entered an order making certain factual findings required for Yesica to petition USCIS for SIJ status.  This immigration status provides otherwise undocumented juveniles, who have been abused, abandoned or neglected by one or both parents, with lawful immigration status and a pathway to citizenship.

9.      Armed with the Maryland Court order recognizing that she met each of the statutory criteria, Yesica filed a petition with USCIS seeking SIJ status.  In a series of decisions, each based on a different but equally erroneous interpretation of Maryland law, the Baltimore Field Office of USCIS (the "Baltimore Field Office") denied Yesica's petition.  The Baltimore Field Office concluded in each decision that the Maryland Court erred in holding that it had jurisdiction under Maryland law to make SIJ-related factual findings in connection with an adoption order.

10.     On appeal, the USCIS Administrative Appeals Office ("AAO") upheld the denial of Yesica's petition for SIJ status.  The AAO based its decision on its own interpretation of Maryland law, ultimately reaching the same conclusion that the Maryland Court was wrong when it held that it had jurisdiction under Maryland law to make SIJ-related findings.  The AAO's decision was based on an analysis of an entirely different set of Maryland statutes not even addressed in the earlier Baltimore Field Office decisions.  The AAO also gave no weight to two *nunc pro tunc* orders which the Maryland Court had entered in an effort to satisfy the confusing and erroneous standard the Baltimore Field Office had applied in evaluating Yesica's petition.

11.     After exhausting her appellate options within USCIS, Yesica now brings suit, seeking declaratory and injunctive relief, to correct USCIS's arbitrary and capricious action and erroneous application of law, which if uncorrected would deny Yesica the immigration status to which she is entitled and result in her removal from the United States.

## PARTIES

12.     Plaintiff Yesica del Carmen Hernandez Rojas was born in Caserio la Galera, San Vicente, El Salvador, and resides in Gaithersburg, Maryland.  After her sister and sister's partner adopted Yesica at the age of twenty, Yesica applied for SIJ status.  Defendant USCIS denied her petition, concluding erroneously that she did not meet the statutory requirements for SIJ status.

13.     Defendant U.S. Department of Homeland Security ("DHS") is a federal executive agency responsible for, among other things, enforcing federal immigration laws and overseeing lawful immigration to the United States.

14.     Defendant U.S. Citizenship and Immigration Services is an agency within DHS that adjudicates applications and requests for benefits under immigration laws, including SIJ petitions.

15.     Defendant John F. Kelly is sued in his official capacity as the Secretary of DHS. In this capacity, he is charged with enforcing and administering the immigration laws.  He oversees each of the component agencies within DHS, including USCIS, and has ultimate authority over all policies, procedures, and practices relating to the adjudication of SIJ petitions.

16.     Defendant James McCament is sued in his official capacity as the Acting Director of USCIS.  In this capacity, he has direct authority over all USCIS policies, procedures, and practices relating to the adjudication of SIJ petitions.

17.     Defendant Greg L. Collett is sued in his official capacity as the District Director of the Baltimore Field Office.  In this capacity, he has direct responsibility for policies, procedures, and practices relating to the adjudication of SIJ petitions in the state of Maryland, including Yesica's petition.

### JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction over Yesica's claims pursuant to 28 U.S.C. §§ 1331 (federal subject matter jurisdiction) and 1346 (civil actions against the United States).  This action arises under the INA, 8 U.S.C. § 1101(a)(27), and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.*  Defendants have waived sovereign immunity for purposes of this suit pursuant to 5 U.S.C. § 702.  The Court has authority to grant declaratory relief under 28 U.S.C. §§ 2201 and 2202.

19.     Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is

entitled to judicial review thereof." 5 U.S.C. § 702.  The APA provides further that "final

agency action for which there is no other adequate remedy in a court [is] subject to judicial

review." 5 U.S.C. § 704.  The APA defines "agency action" to include "the whole or a part of an

agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."

5 U.S.C. § 551(13).

20.     28 U.S.C. § 1331 confers jurisdiction over a suit that arises under the APA.  *See*

*Bowen* v. *Massachusetts*, 487 U.S. 879, 891 n.16 (1988) ("[I]t is common ground that if review

is proper under the APA, the District Court ha[s] jurisdiction under 28 U.S.C. § 1331.").

21.     Federal courts review administrative actions pursuant to the APA to determine

whether agency action was arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law.  5 U.S.C. § 706(2)(A).  In a proceeding to review agency action under the

APA, the court must decide whether the agency "articulate[d] a satisfactory explanation for its

action," *Motor Vehicle Mfrs. Ass'n of U.S., Inc.* v. *State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29,

43 (1983), to "enable the court to evaluate the agency's rationale at the time of [its] decision,"

*Pension Benefit Guar. Corp.* v. *LTV Corp.*, 496 U.S. 633, 654 (1990).

22.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(e) because

Defendants DHS and USCIS are headquartered in this District, and Defendants Kelly and

McCament perform their professional responsibilities in this District.

## STATUTORY AND REGULATORY BACKGROUND

### Federal Immigration Statutes/Regulations

23.     Pursuant to the Immigration and Nationality Act ("INA"), 8 U.S.C.

§ 1101(a)(27)(J), as amended on December 23, 2008, by the Trafficking Victims Protection and

Reauthorization Act, Pub. L. No. 110-457, an immigrant eligible for SIJ status is one:

(i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;

(ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and

(iii) in whose case the Secretary of Homeland Security consents to the grant of special immigrant juvenile status, except that—

    (I)     no juvenile court has jurisdiction to determine the custody status or placement of an alien in the custody of the Secretary of Health and Human Services unless the Secretary of Health and Human Services specifically consents to such jurisdiction; and

    (II)     no natural parent or prior adoptive parent of any alien provided special immigrant status under this subparagraph shall thereafter, by virtue of such parentage, be accorded any right, privilege, or status under this chapter.

24.     USCIS has promulgated regulations under this statute interpreting the requirements that must be met by a petitioner seeking SIJ status. *First*, a petitioner must be a juvenile, which is defined as a person "under twenty-one years of age" who is "unmarried." 8 C.F.R. § 204.11(c)(1)-(2); *see also* 8 U.S.C. § 1101(b)(1) (defining a "child" as "an unmarried person under twenty-one years of age"). *Second*, a petitioner must have been "declared dependent upon a juvenile court located in the United States in accordance with state law governing such declarations of dependency," "deemed eligible by the juvenile court for long-term foster care" as that term is defined in the applicable federal regulations and "[c]ontinue[] to be dependent upon the juvenile court and eligible for long-term foster care, such declaration, dependency or eligibility not having been vacated, terminated, or otherwise ended." 8 C.F.R. § 204.11(c)(3-5). USCIS has defined "[e]ligible for long-term foster care" to mean "that a determination has been made by the juvenile court that family reunification is no longer a viable

option." *Id.* § 204.11(a).  USCIS also has defined "juvenile court" to mean "a court located in

the United States having jurisdiction under State law to make judicial determinations about the

custody and care of juveniles."  *Id.  Third*, a petitioner must have "been the subject of judicial

proceedings or administrative proceedings authorized or recognized by the juvenile court in

which it has been determined that it would not be in the alien's best interest to be returned to the

country of nationality or last habitual residence of the beneficiary or his or her parent or parents."

*Id.* § 204.11(c)(6).

25.     Under the federal statutory scheme, state courts, rather than USCIS, are to make

the requisite factual findings that a petitioner is eligible for SIJ status.  As USCIS has explained,

this is based on the expertise of state courts, which are frequently required to sort through

complex factual records and to make sensitive judgements in adjudicating a wide variety of cases

related to the care and custody of juveniles:

> USCIS relies on the expertise of the juvenile court in making child welfare
> decisions and does not reweigh the evidence to determine if the child was
> subjected to abuse, neglect, abandonment, or a similar basis under state law.  In
> order to exercise the statutorily mandated DHS consent function, USCIS requires
> that the juvenile court order or other supporting evidence contain or provide a
> reasonable factual basis for each of the findings necessary for classification as a
> SIJ.  The evidence needed does not have to be overly detailed, but must confirm
> that the juvenile court made an informed decision in order to be considered
> "reasonable."  USCIS generally consents to the grant of SIJ classification when
> the order includes or is supplemented by a reasonable factual basis for all of the
> required findings.

6 USCIS Policy Manual J.2(D)(5).

26.     USCIS has confirmed that in reviewing SIJ petitions, it "generally defers to the

court on matters of state law and does not go behind the juvenile court order to reweigh evidence

and make independent determinations about abuse, neglect, or abandonment." 6 USCIS Policy

Manual J.2(A).  So long as a "juvenile court order [has] been properly issued under state law" it

will be "valid for the purposes of establishing eligibility for SIJ classification."  6 USCIS Policy

Manual J.2(D)(4).  As USCIS has explained, "[t]here is nothing in USCIS guidance that should

be construed as instructing juvenile courts on how to apply their own state law."  *Id.*

27.    Accordingly, although USCIS is charged by statute with adjudicating petitions for

SIJ status, 8 U.S.C. § 1101(a)(27)(J)(iii), its review is circumscribed and limited to confirmation

"that the request for SIJ classification is bona fide, which means that the juvenile court order was

sought to obtain relief from abuse, neglect, abandonment, or a similar basis under state law, and

not primarily or solely to obtain an immigration benefit."  6 USCIS Policy Manual J.2(D)(5).

Petitioners must show that they have satisfied the statutory requirements for obtaining SIJ status

by a simple preponderance of the evidence.  *See, e.g.*, *Matter of Chawathe*, 25 I&N Dec. 369,

375 (AAO 2010).

28.    Upon USCIS's approval of a petition for SIJ status, a petitioner becomes eligible

to adjust his or her status to that of an alien lawfully admitted to the United States for permanent

residence.  8 U.S.C. § 1255(a), (h).

**Maryland Law**

29.    Unlike other states where separate courts adjudicate matters involving juveniles,

Maryland circuit courts are courts of equity with general jurisdiction over a wide variety of

cases, including those dealing with adoption and the custody and care of juveniles.  In certain

counties, including Montgomery County where Yesica resides, the circuit court is the *only* state

court with jurisdiction over these matters.  *See, e.g.*, Md. Code Ann., Cts. & Jud. Proc. §§

3-8A-01 *et seq.* (juvenile delinquency), 3-801 *et seq.* ("child in need of assistance" cases); Md.

Code Ann., Est. & Trusts § 13-702(a)(1) (guardianship petitions filed by "any person interested

in the welfare of the minor"); Md. Code Ann., Fam. Law §§ 5-3A-01 *et seq.* (adoption through a

private adoption agency), 5-3A-13 (guardianship petitions filed by child placement agencies),

5-3B-01 *et seq.* (independent adoption not using an agency), 5-301 *et seq.* (adoption through the local Department of Social Services), 5-313(b) (guardianship petitions filed by the local Department of Social Services), 5-501 *et seq.* (foster care), 5-701 *et seq.* (child abuse and neglect), 9.5-101 *et seq.* (child custody and visitation).

30.     Because the circuit courts of Maryland are courts of general jurisdiction, there are no universally applicable age limits restricting their authority.  Instead, age-based jurisdictional restrictions vary significantly depending on the type of action and may be dependent upon the facts of the particular case.  For example, in the context of "child in need of assistance" ("CINA") cases, jurisdiction continues until the juvenile reaches age twenty-one, provided that the CINA petition is first filed when he or she is under eighteen.  *See* Md. Code Ann., Cts. & Jud. Proc. §§ 3-801(e); 3-804(a)(1), (b).  Similarly, jurisdiction over juvenile delinquency cases begins when a person under the age of eighteen commits a crime but continues until that person turns twenty-one.  *See* Md. Code Ann., Cts. & Jud. Proc. §§ 3-8A-01(d), 3-8A-03(a)(1), 3-8A-05(a), 3-8A-07(a).

31.     The Maryland statute under which the Maryland Court ordered Yesica's adoption, Md. Code Ann., Fam. Law § 5-3B-13(a), contains no age restrictions at all.  Neither do at least two other Maryland adoption statutes — Md. Code Ann., Fam. Law §§ 5-3A-01 or 5-301.

32.     On October 1, 2014, Maryland amended its Family Law code to change the age restrictions applicable to custody and guardianship proceedings.  In doing so, the Maryland legislature defined the term "child," for purposes of such actions, to mean an unmarried individual under the age of twenty-one.  Md. Code Ann., Fam. Law § 1-201(a), (b)(10).

## STATEMENT OF FACTS

**Life in El Salvador**

33.     Yesica was born on February 13, 1994 in Caserio la Galera, San Vicente, El Salvador, a small agricultural community.

34.     Yesica's father, Prudencio Hernandez, died when she was one year old.  Prior to his death, Mr. Hernandez did not provide any financial support to Yesica or her mother.

35.     Beginning at the age of eight, Yesica was abused by her mother, Maria Reina Rojas, who beat her with a belt or a switch from a tree once or twice each week.  Yesica suffered severe pain as a result of these beatings.

36.      In part due to illness, Yesica's mother was unable to provide for the three children and seven grandchildren who all lived in her home and for whom she was the primary caregiver.

37.     At the age of fourteen, Yesica was required to take on demanding responsibilities for the care of the other children in her home.  She rose each day at 6:30 a.m. to grind corn, build a fire, cook tortillas, and feed the other children.  Because of these demands on her time, Yesica was able to attend school for only three hours a day.

38.     At age sixteen, Yesica began dating nineteen-year-old Humberto Isaiah.  Soon thereafter, Yesica became pregnant with her only child.  Mr. Isaiah abandoned Yesica and their unborn child, leaving Yesica to support their unborn child on her own.  Worsening the situation, Yesica's mother expelled Yesica from the family home due to the pregnancy, explicitly rejecting any ongoing obligation to support Yesica or her new grandchild.

39.     Yesica never finished high school and had no prospects for a job in El Salvador that would allow her to care for herself and her soon-to-be-born child.

40.     As an unwed, pregnant teenager, Yesica was ostracized by her family, church, and community in El Salvador.  Yesica's mother refused to care for her, causing Yesica to feel isolated and alone.

**Arrival in the United States**

41.     With the hope of finding a better life for herself and her child, Yesica fled to the United States in June 2011 and was taken into custody by the U.S. Department of Health and Human Services' Office of Refugee Resettlement.  U.S. Department of Health and Human Services then placed Yesica in the custody of her older sister, Maria Norma Gonzales, and her sister's partner, Julio Lozano.

42.     Yesica's U.S. citizen child was born in Maryland in 2011.  Yesica's sister and her sister's partner have treated the child as one of their own children, providing significant financial and emotional support to both Yesica and her child.  The child's father has never provided financial support or sought to establish a relationship with his child.

43.     Yesica is diligently studying English so that she can obtain employment to support herself and her child once authorized to do so.

44.     Yesica has never been charged with or convicted of a crime.

**Maryland Court Proceedings**

45.     On June 9, 2014, when Yesica was twenty years old, she was adopted by her sister and sister's partner and placed in the permanent custody of her adoptive parents by the Maryland Court.  (Exhibit A.)  The adoption order terminated Yesica's mother's parental rights and formalized Yesica's close bond with her sister and sister's partner, who are "like a mother and father to [her]."  (Exhibit B.)

46.     On September 4, 2014, as part of the adoption proceeding, the Maryland Court

entered an Order Regarding Minor's Eligibility for Special Immigrant Juvenile Status, finding

that Yesica's reunification with her parents is not viable due to her father's death and her

mother's abuse and neglect.  (Exhibit C.)  The Maryland Court cited the frequent beatings that

Yesica endured and the dangerous household tasks, such as cooking over an open flame, to

which Yesica was assigned at a young age.  The Maryland Court found that it is not in Yesica's

best interest to return to El Salvador, where she would have no one to care for her and where she

would be separated from her young child, who is a U.S. citizen.  Finally, the Court found that it

"[had] jurisdiction under Maryland law to make judicial determinations about the custody and

care of juveniles," and that "Yesica [was] dependent on this juvenile court or legally committed

to, or placed under the custody of, an individual, namely her adoptive parents Mr. Julio Lozano

and Ms. Maria Norma Gonzales, or entity appointed by a State or juvenile court located in the

United States."  (*Id.*)  The court thus not merely tracked the statutory language of the INA, but

found specifically that under Maryland law its order of adoption necessarily included a

determination as to Yesica's custody within the meaning of the INA, thus satisfying the

requirements for achieving SIJ status.

### Proceedings Before the USCIS Baltimore Field Office

47.     On September 12, 2014, Yesica filed an I-360, Petition for Amerasian,

Widow(er), or Special Immigrant.  At the time, as confirmed by the Maryland Court's order,

Yesica met all requirements for SIJ status:  she was (a) under twenty-one years of age;

(b) unmarried; (c) unable to reunify with either of her parents due to abuse, neglect,

abandonment, or similar basis under Maryland law; (d) in the custody of an individual appointed

by a juvenile court; and (e) subject to a judicial or administrative determination that it was not in

her best interest to return to El Salvador.  *See* 8 U.S.C. § 1101(a)(27)(J); 8 C.F.R. § 204.11(c)(1-3).

48.     On June 26, 2015, the Baltimore Field Office issued Yesica a notice of intent to deny her petition.  (Exhibit D.)  The notice indicated that notwithstanding the federal definition of a "juvenile" or "child" as an unmarried individual under twenty-one years of age, because Yesica had reached the age of eighteen before the Maryland Court entered its order of adoption, Yesica was not a juvenile under *Maryland* law, and the Maryland Court incorrectly concluded that it was acting as a "juvenile court" in Yesica's case.

49.     As support, the Baltimore Field Office cited to a Maryland statute amended after Yesica's order of adoption was entered, Maryland Code Ann., Fam. Law § 1-201, for the proposition that "[p]rior to October 1, 2014, the court could only exercise jurisdiction over children under the age of 18."  (Exhibit D.)  The Baltimore Field Office went on to conclude that "at the time the judge entered your court order, you were over the age of 18, and the court did not have jurisdiction to make a finding for special immigrant juvenile status."  (*Id.*)

50.     Yesica sought reconsideration of this preliminary ruling arguing that the statutory change in 2014 did not alter the fact that the Maryland Court had had jurisdiction over Yesica's petition for adoption and that Maryland's circuit courts have been and remain empowered to decide adoption cases without respect to any age-based limitations.  *See* Md. Code Ann., Fam. Law, § 5-3B-13.  Indeed, the Circuit Court for Montgomery County, Maryland is the *only* court authorized to hear cases of any kind concerning the care or custody of juveniles in Montgomery County.

51.     On February 17, 2016, the Baltimore Field Office denied Yesica's SIJ petition. (Exhibit E.)  Possibly recognizing that its earlier notice of intent to deny reflected an incorrect

understanding of Maryland law, the Baltimore Field Office's formal decision was based on a different theory for why the Maryland Court had erred in applying Maryland law.

52.     The Baltimore Field Office acknowledged that the Maryland Court had jurisdiction over the adoption proceedings and petitions for SIJ findings, but claimed that Yesica had failed to establish that "the adoption court had jurisdiction to make a SIJ finding" with respect to her.  (*Id.*)

53.     Admitting that the Maryland Court had "jurisdiction over both adults and juveniles," the Baltimore Field Office imposed an additional requirement on SIJ orders issued by such courts:  an order "will only suffice if the record shows that the court exercised jurisdiction over the petitioner as a juvenile."  (*See id.* (citing 8 C.F.R. § 204.11(c)(3)).)  In a parenthetical, the Baltimore Field Office noted that such a "requirement" meant simply "that the state court order must be in compliance with *state* law governing juvenile court dependency."  (*Id.* (emphasis added).)  Once again, citing to a Maryland statute unrelated to adoptions and which defines a "child" (but not a "juvenile") in non-adoption matters, the Baltimore Field Office determined that "[p]rior to October 1, 2014, a Maryland court could only exercise jurisdiction over a child under the age of 18, as Maryland law defined a child as an 'unmarried individual under the age of 18.'"  (*Id.*)

54.     Because the Baltimore Field Office decisions appeared to turn in part on a comparison of prior Maryland law and the October 2014 statutory amendment (enacted one month after the Maryland Court's original order), Yesica obtained a *nunc pro tunc* order from the Maryland Court, making the prior order effective October 1, 2014 (at which time the amended statute was effective and Yesica was still under the age of twenty-one).  (Exhibit F.)

55.     Yesica diligently sought review of the Baltimore Field Office's decision through the entire appeals process provided under the INA.  Yesica requested the District Director of the Baltimore Field Office to reopen and reconsider its prior decision both on the basis that it reflected an incorrect application of law and because of the *nunc pro tunc* order recently issued by the Maryland Court.  That order had been issued to bring it within the amendment of Maryland law that specifically provided that the court had jurisdiction to make SIJ findings with respect to an immigrant child under age twenty-one.

56.     On August 9, 2016, the Baltimore Field Office denied Yesica's first Notice of Appeal or Motion (Form I-290B).  (Exhibit G.)  Apparently unsatisfied with the reasons for denial identified in either of the prior two decisions by the Baltimore Field Office, the District Director determined that Yesica "has not provided any evidence that adoption courts are legally entitled to make SIJ findings."  (*Id.*)  This finding ignored the fact that the Maryland Circuit Court authorized to order adoptions (and that had issued such an order in Yesica's case) is the very same court statutorily authorized to make SIJ findings both before and after the amendments to Maryland Family Law.  The District Director also denied any effect to the *nunc pro tunc* order, concluding without explanation that the Maryland Court order "dated October 1, 2014" bore "no indication that this was a nunc pro tunc order" intended by the Maryland Court to be effective as of that date.  (*Id.*)

57.     The District Director's decision implicitly acknowledged that Yesica would succeed if there were a nunc pro tunc order in place dated back to the time the amended statute was in place and Yesica was still under age twenty-one.  (Exhibit G (denial on the basis that "[t]here is no indication that this was a *nunc pro tunc* order or that you obtained it on October 1,

2014.  On March 15, 2016, the date the order was entered, you were over the age of 21.  As such, you are no longer eligible for SIJ status.").)

58.      Accordingly, Yesica returned to the Maryland Court yet again to obtain an order clarifying that the Maryland Court had intended that its order dated October 1, 2014 be effective *nunc pro tunc* as of that date.  The Maryland Court then entered a third order making the same findings relevant to SIJ status.  The Maryland Court again dated the order effective October 1, 2014, and this time clarified the retroactive effect of the order in its title:  "*Nunc Pro Tunc* Order Regarding Minor's Eligibility for Special Immigrant Juvenile Status."  (Exhibit H.)  It also wrote at the end of the order "Dated *nunc pro tunc* to October 1, 2014." (*Id.*)

59.      Yesica then sought review of her SIJ petition by the USCIS Administrative Appeals Office ("AAO"), submitting the new Maryland Court *nunc pro tunc* order with her brief.

60.      The AAO denied Yesica's appeal on April 18, 2017, in a non-precedential decision.  (Exhibit I.)  In its decision, the AAO recognized that (1) "[s]tate law is [] controlling on the definition of a juvenile or child within the state's child welfare provisions," and (2) Maryland "circuit courts can act as juvenile courts in certain cases." (*Id.*)  Moving away from the inapplicable definitional statute relied upon by the Baltimore Field Office, the AAO asserted that under yet another statute, Maryland General Provisions § 1-103, a "minor" is "an individual under the age of 18 years." (*Id.*)  Although noting that that relevant Maryland adoption statute contains no such age restriction, the AAO concluded that in light of this equally inapplicable statute, the Maryland Court's "adoption and SIJ orders [] applied to the Petitioner as a young adult." (*Id.*)  Therefore the Maryland Court "made no determination regarding the custody or care of the Petitioner as a minor . . . and the orders did not identify any other provision of Maryland law under which the court took jurisdiction over the Petitioner as a

minor," notwithstanding the plain language of the Maryland Court orders to the contrary.  (*Id.*)
None of the relevant federal statutes, federal regulations, or Maryland laws make any reference
to "young adults."

61.     The AAO stated that it did "not question the circuit court's jurisdiction over the
Petitioner" but concluded that "[t]he record d[id] not establish that the circuit court had
jurisdiction to determine the custody of young adults like the Petitioner as a minor under
Maryland law."  (*Id.*)  Notably, the AAO cited no statutory or regulatory provision defining the
new age classification upon which it relied — "young adult" — and failed to explain how the
definition of "minor" found elsewhere in the Maryland statute books had any relevance to the
adoption statute applicable to Yesica's adoption proceeding.  Likewise the AAO failed to explain
how a "young adult" subject to a custody determination by the sole state court authorized to
determine the custody and care of juveniles is ineligible for SIJ status.  Instead it engrafted a
requirement not found in the statute or regulations, namely that the court making SIJ findings
with respect to a person under age twenty-one not only be a court having juvenile jurisdiction
(and therefore the special expertise required to make such determinations) but that it have been
exercising "juvenile" rather than "young adult" jurisdiction in making its SIJ findings — all
notwithstanding that the federal standard for permitting SIJ findings by a state that intends to
make them is age twenty-one.

62.     Finally, the AAO denied any effect to the Maryland Court's *nunc pro tunc* order.
(*Id.*)  Retreating from the Baltimore Field Office's reliance on the October 1, 2014 statutory
amendment cited, the AAO determined instead that "the amended provision of Maryland law is
inapplicable to her case" because "[j]urisdiction over adoption is codified in a separate
subsection from custody or guardianship."  (*Id.*)  As a result, the AAO decided the *nunc pro tunc*

order failed to resolve the issues it identified with Yesica's SIJ petition.  This ruling ignored that

the consequence of the Maryland court's order of the adoption was to give custody to Yesica's

adoptive parents within the meaning of the word "custody" as used in the INA.

## CAUSE OF ACTION

### (Violation of Administrative Procedure Act, 5 U.S.C. § 706)

63.     Defendants' denial of Yesica's SIJ petition, based on its disregard of the

Maryland Court's determination that it possessed jurisdiction under state law to issue SIJ-related

findings, is contrary to Maryland law, the INA, and USCIS policy.  As such, it is arbitrary,

capricious, an abuse of discretion, not in accordance with law, and in excess of Defendants'

statutory jurisdiction and authority.

64.     Defendants' denial of Yesica's SIJ petition on the ground that the Maryland Court

was not acting as a "juvenile court" is also arbitrary, capricious, not in accordance with law, and

in excess of Defendants' statutory jurisdiction and authority.

65.     Defendants' denial of Yesica's SIJ petition was contrary to Maryland law insofar

as the Defendants concluded that the Maryland Court erred in deciding under state law that it had

jurisdiction to issue SIJ-related findings.

66.     Because Defendants ruled on issues of state law relegated to state judicial

proceedings under the INA statutory scheme, Defendants' conduct exceeded their power under

the INA and constituted an ultra vires interference in a matter explicitly reserved for the State of

Maryland.  This conduct was arbitrary and capricious and constituted a further abuse of

discretion.

67.     In the alternative, Defendants' denial of Yesica's SIJ petition on the ground that

the *nunc pro tunc* order did not cure any purported deficiencies in the prior orders of the

Maryland Court was arbitrary, capricious, an abuse of discretion, not in accordance with law, and in excess of Defendants' statutory jurisdiction and authority.

68.     Defendants' final agency actions have caused Yesica to suffer injuries in fact.  In particular, in light of ongoing removal proceedings, Yesica justifiably fears being forced to separate from her adoptive parents and her young, U.S. citizen child, and she does not know how she would support herself in El Salvador.

69.     The interests that Yesica seeks to protect are within the zone of interests regulated by the applicable provisions of the INA.

70.     Defendants' final agency actions are the direct cause of Yesica's injuries.

71.     Yesica's requested relief would redress her injuries.

72.     Yesica has no adequate remedy at law to redress the wrongs suffered as set forth in this Complaint.

## PRAYER FOR RELIEF

73.     Yesica has suffered and will continue to suffer irreparable injury as a result of the unlawful acts, policies, and practices of Defendants, as alleged herein, unless Yesica is granted the relief she requests.

WHEREFORE, Yesica prays that the Court grant her the following relief:

(a) declare that Defendants are required to give full effect to the Maryland Court's determination that it properly exercised its jurisdiction under Maryland law in issuing its orders making SIJ-related findings;

(b) declare that:

(1) for purposes of 8 U.S.C. § 1101(a)(27)(J)(i), a "juvenile court" includes a Maryland circuit court exercising jurisdiction over a petitioner between the ages of eighteen and twenty-one in an adoption proceeding;

(2) because Yesica was the subject of adoption proceedings pursuant to Md. Code Ann., Fam. Law § 5-3B-13(a), she was "dependent" on a "juvenile court," as those terms are defined by 8 CFR § 204.11(c)(3) and 8 CFR § 204.11(a), respectively;

(3) denial of Yesica's SIJ petition by USCIS was arbitrary, capricious, and not in accordance with applicable law; and

(4) the *nunc pro tunc* order issued on September 6, 2016, by its issuance after the change in Maryland law cured any purported deficiencies in Yesica's petition for SIJ status.

(c) order that Defendants immediately vacate USCIS's decision denying Yesica's SIJ petition;

(d) remand Yesica's case to Defendants with instructions to reconsider her SIJ petition in accordance with (a-b);

(e) order Defendants to assign any resulting approval notice a priority date of September 12, 2014, the date on which the Baltimore Field Office received Yesica's original petition;

(f) order that Defendants pay Yesica's reasonable litigation costs and attorney's fees, pursuant to 28 U.S.C. § 2412(b) or any other applicable provision of law; and

(g) grant all other relief that the Court deems just and proper to ensure that Defendants have in place policies, practices, and procedures respecting Maryland courts'

interpretation of their jurisdiction under state law, or, in the alternative, clarifying the

definition of a "juvenile" within the meaning of the federal statute.

July 17, 2017

Respectfully submitted,

/s/ David M. Teslicko
David M. Teslicko (DC Bar No. 1019760)
Sullivan & Cromwell LLP
1700 New York Avenue, N.W., Suite 700
Washington, D.C.  20006
(202) 956-6954

*Attorney for Plaintiff*